## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

NADIA WINSTON                                       **CIVIL ACTION**

**VERSUS**                                               **NO. 20-1402**

**LOUIS DEJOY, UNITED STATES**            **MAG. SECTION 3**
**POSTMASTER GENERAL**

## ORDER & REASONS

Before the Court is a Motion for Summary Judgment (Rec. Doc. No. 57) filed by Defendant, Louis DeJoy, Postmaster General of the United States Postal Service ("USPS"). The motion is unopposed. Having reviewed the pleadings and the applicable law, the Court rules as follows.

### I.     BACKGROUND

This matter arises from the alleged retaliatory termination of plaintiff, Nadia Winston ("Winston" or "Plaintiff") from her employment with the USPS. (Rec. Doc. No. 4-1, p. 4). On June 3, 2020, Winston, proceeding *pro se* and *in forma pauperis*, filed suit using the district court form "Complaint for Employment Discrimination." (Rec. Doc. No. 4). In the complaint, Winston alleges that during her tenure at the USPS she was bullied and harassed, and as a result of reporting the harassment, she was terminated in retaliation. (Rec. Doc. No. 4-1, p. 4). In her own words:

> I Nadia Winston claims are of merit due to I Nadia Winston being terminated after emailing a complaint to the United States Postal Service employee by the name of Sophia Stampley on 12/19/2018. As I Nadia Winston would make follow up phone calls I Nadia Winston was told by Sophia Stampley that she[']d made the same management officials whom I[']ve complained about aware of I Nadia Winston allegations and questioned the defendants about I Nadia Winston allegations. Sophia Stampley never answered her (Stampley) phone after this communication between her (Stampley) and I Nadia Winston. On January 3, 2019 I Nadia Winston was terminated.

> (Rec. Doc. No. 33, p. 1). Winston brings her claims pursuant to Title VII of the Civil Rights

Act, seeking backpay, compensatory, and punitive damages. (Rec. Doc. No. 4-1, p. 5).

1

In the instant motion, Defendant argues that this Court should dismiss Plaintiff's claims for several reasons. First, Winston's complaint letter to Human Resources ("HR") does not demonstrate participation in an activity protected under Title VII. (Rec. Doc. No. 57-1, p. 1). Next, Winston cannot establish a causal link between her letter to HR and the decision to terminate her. *Id*. Accordingly, Defendant argues that Plaintiff cannot establish two elements of her prima facie case of retaliation. Alternatively, Defendant argues that Winston cannot produce any summary judgment evidence demonstrating that the decision to terminate her was motivated by reprisal, and finally, to the extent Winston is attempting to include claims not administratively exhausted in this suit, the USPS urges the dismissal of those unexhausted claims. *Id*.

For her part, Plaintiff has filed no opposition to the instant motion.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate where the evidence before a court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id*.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that

the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). After the moving party has met its burden, if the non-moving party is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id*. "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). However, Rule 56 does not require a court to "sift through the record in search of evidence to support a party's opposition to summary judgment." *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (quoted source omitted).

When evaluating a motion for summary judgment, courts "may not make credibility determinations or weigh the evidence." *Total E & P USA Inc. v. Kerr-McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted). Additionally, a court "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Id*. To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence" that a genuine issue of material fact exists. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). "'If the evidence is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Tech. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012) (quoting *Anderson*, 477 U.S. at 248). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. "Summary judgment, to be sure, may be appropriate, even in cases where elusive concepts such as motive or intent are at issue, … if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994) (citing *Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1449 (5th Cir. 1993)).

Furthermore, there can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322-23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323.

Where the movant bears the burden of proof on an issue, they must establish "beyond peradventure all of the essential elements of the claim… to warrant judgment in [their] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). The movant must establish their right to prevail as a matter of law. *FDIC v. Hamilton*, 939 F.2d 1225, 1228 (5th Cir. 1991) (citing Fed. R. Civ. P. 56).

In the Fifth Circuit, a district court may not grant a "default" summary judgment on the ground that it is unopposed. *Cortez v. Lamorak Ins. Co.*, Civ. A. No. 20-2389, 2022 WL 3370149, at *3 (E.D. La. Aug. 16, 2022) (citing *Morgan v. Fed. Express Corp.*, 114 F. Supp. 3d 434, 437 (S.D. Tex. 2015) (collecting cases)). Even in the context of unopposed motions for summary judgment, the movant must still show that there is no genuine issue of material fact, and that it is entitled to summary judgment as a matter of law. *Id*. (citing *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 363 n. 3 (5th Cir. 1995)). When a motion for summary judgment is unopposed, a court may accept the movant's evidence as undisputed. *Id*. (citing *Morgan*, 114 F. Supp. 3d at 437) (quoting *UNUM Life Ins. Co. of Am. v. Long*, 227 F. Supp. 2d 609 (N.D. Tex. 2002)). Nevertheless, if the moving party fails to meet its burden, the Court must deny its motion for summary judgment. *Id*.

Finally, although the Court construes *pro se* filings liberally, *pro se* parties are still required to "abide by the rules that govern the federal courts." *Thorn v. RaceTrac Petroleum, Inc.*, No. 20-

2509, 2021 WL 3579018, at *1 (E.D. La. July 20, 2021) (quoting *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014)). Further, although a liberal reading of the pleadings is afforded *pro se* plaintiffs by the courts, the court is not required to search for or try to create causes of actions or find material issues of fact for *pro se* plaintiffs. *Kiper v. Ascension Parish Sch. Bd.*, No. 14-313, 2015 WL 2451998, at *1 (M.D. La. May 21, 2015).

## III.   LAW & ANALYSIS

### a.   EEOC Complaint

In an employment discrimination case, the plaintiff must exhaust all administrative remedies before pursuing her claims in federal court. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002) (citing *Dao v. Auchan Hypermarket*, 6 F.3d 787, 789 (5th Cir. 1996)). The plaintiff exhausts her administrative remedies when she files a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and receives a statutory notice of the right to sue. *Dao*, 96 F.3d at 788-89 (noting that although filing a claim with the EEOC is not a jurisdictional prerequisite, it "is a precondition to filing suit in district court.").

To determine whether a Title VII claim has been exhausted, courts construe the EEOC charge in its broadest reasonable sense and ask whether the claim "can reasonably be expected to grow out of the charge of discrimination." *Davenport v. Edward D. Jones & Co., L.P.*, 891 F.3d 162, 167 (5th Cir. 2018) (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)). Although "[v]erbal precision and finesse [in the charge] are not required," a Title VII lawsuit can include only those allegations that are "like or related to [those] allegation[s] contained in the [EEOC] charge and growing out of such allegations during the pendency of the case before the Commission." *Id*.

In Winston's EEOC "Acceptance for Investigation," it states: "You allege discrimination on the basis of Retaliation (Unspecified), when: On or about January 3, 2019, you were issued a letter of separation dated January 3, 2019, during your probationary period, for safety and unsatisfactory performance." (Rec. Doc. No. 57-3, p. 3). Accordingly, the only issue set forth and forwarded to the EEOC for processing, including an investigation, is a claim for retaliatory termination. Any other claims are unexhausted and not properly before this Court and will therefore not be considered.

### b.  Title VII Retaliatory Termination

Winston argues that she was fired in retaliation for complaining about bullying and harassment to HR. The Fifth Circuit has held that the *McDonnell Douglas* burden shifting framework applies to Title VII retaliation claims. *Medlock v. Ace Cash Exp., Inc.*, 589 Fed.Appx. 707, 709 (5th Cir. 2014). *McDonnell Douglas* requires that:

> (1) first, the employee must demonstrate a prima facie case of retaliation; (2) the burden then shifts to the employer, who must state a legitimate non-retaliatory reason for the employment action; and (3) if that burden is satisfied, the burden then ultimately falls to the employee to establish that the employer's stated reason is actually a pretext for unlawful retaliation.

*Id*. In order to demonstrate a prima facie case of retaliation, Winston must prove: "(1) she engaged in protected activity; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action." *Id*.

### i.  Protected Activity

Defendant argues that the letter Winston sent to HR complaining of harassment and bullying is not protected activity under Title VII. (Rec. Doc. No. 57-1, p. 10). In addition. Defendant points to Winston's deposition testimony that indicated she was not sure of the reasons why she was the subject of bullying and harassment, stating that she simply believes the behavior was a means to terminate her employment. *Id*. at 11. Defendant further points to testimony

6

affirmatively stating that the harassment and bullying was not based on race, and that it was "possible" it was based on gender.[1] *Id*. Defendant argues that in her HR complaint, Winston identified no practice made unlawful by Title VII and that she "simply complained that she received unfair or undesirable treatment." *Id*. Accordingly, the USPS argues that Winston is unable to demonstrate that she engaged in activity protected by Title VII.

"Protected activity is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII." *Williams v. Recovery Sch. Dist.*, 859 F.Supp.2d 824, 830-31 (E.D. La. 2012) (quoting *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003)). Although filing a complaint with HR is generally considered protected activity under Title VII, *see, e.g., Turner v. Jacobs Engineering Group, Inc.*, 470 Fed.Appx. 250, 252 (5th Cir. 2012), "a vague complaint, without any reference to an unlawful employment practice under Title VII, does not constitute protected activity." *Davis v. Dallas Indep. Sch. Dist.*, 448 Fed.Appx. 485, 493 (5th Cir. 2011); *see also, e.g., Tratree v. BP N. Am. Pipelines, Inc.*, 277 Fed.Appx. 390, 395 (5th Cir. 2008) ("Complaining about unfair treatment without specifying why the treatment is unfair … is not protected activity."); *Harris-Childs v. Medco Health Solutions, Inc.*, 169 Fed.Appx. 913, 916 (5th Cir. 2006) (affirming summary judgment on retaliation claim where plaintiff never "specifically

---

[1] Q [Attorney:] And do you believe that this bullying and harassing is based on any one factor, any multiple factors? Like is there a reason why they targeted you for the bullying and harassment?
A [Winston:] Well, I'm not sure what was the specific reason, as far as the reason why. But to me I felt like it was all used to terminate me. Now, prior to that why they did it, I don't know.
Q [Attorney:] Well, do you believe it was because of your race?
A [Winston:] No. I don't believe it was because of my race.
Q [Attorney:] Do you believe it was because of your gender being a woman or a female?
A [Winston:] That's possible.
…
Q [Attorney:] Could there be any other reason they were harassing and bullying you?
A [Winston:] As I stated before, I'm not sure what their reason was, you know, to be honest, like what their intentions were as far as the reason why. But the number one reason was to find reasons to terminate me.
(Rec. Doc. No. 57-6, pp. 60-62).

complained of racial or sexual harassment, only harassment"); *Moore v. United Parcel Serv., Inc.*, 150 Fed.Appx. 315, 319 (5th Cir. 2005) ("Moore … was not engaged in a protected activity, as his grievance did not oppose or protest racial discrimination or any other unlawful employment practice under Title VII."); *Evans v. Tex. Dep't of Transp.*, 547 F.Supp.2d 626, 654 (E.D. Tex. 2007) ("Plaintiff has not shown that she engaged in a statutorily protected activity. Specifically, although Evans complained of a purportedly hostile work environment, at no time did she suggest that [the conduct at issue] was related to Evan's race, sex, … or other characteristic protected by Title VII.").

In her complaint, Plaintiff indicates that she complained about "bullying and harassment" to Sophia Stampley with HR in light of the e USPS "no tolerance policy" for such bullying. (Rec. Doc. No. 4-1, p. 4). Plaintiff recited the letter aloud during her deposition testimony as follows:

> It says I, Nadia Winston, is writing this letter because I feel like I'm being bullied at work. First incident I was clocked out by Renata Thomas while I was still working off the clock.
> At this time I was putting the raw mail pieces up and missorts. On 12/16/18 I was told to come to work at 8:30 a.m. by Renata Thomas which means I wasn't given a set time.
> The day after Veterans Day, I was written up for bringing back mail when they had 13 trays of DPS. If I'm not mistaken, I think I was the only one written up. Other carriers brought back mail as well.
> The next day I was wrote up again. And this was the Thursday, so I had ADVO and a large volume of flex. As I recite these situations, my shop steward Reginald is aware of the incidents.
> On 12/15/18 I was given route 52. So I don't even see the side part. So I was told by Renata Thomas to run parcels which I had two hampers full of parcels as well as large parcels.
> Previously when running parcels out there, I was told by Renata Thomas – no, wait.
> Previously when running parcels – I don't even – to run parcels and – I don't know. Wait.
> I was told by Renata Thomas to run large parcels and bring the mail back. So I ran the large parcels and came back. When I arrived I made Renata Thomas aware that I had more parcels still in the back and she looked at me, but I didn't say anything.
> She told me she – she told me she switched me from route 52 to 36 and I still need to finish the parcels on 52. She switched – she said she switched the routes because 52 is harder than 36.

She also told me to take the auxiliary for 60 so I did as told. Approximately one hour later she called me and told me to come get the spurs for 36. I asked her, I thought I was taking the parcels to 52. She said no, I had to take parcels for 36, too. So I did as I was told.

When I got to the station it was small parcels and spurs. I told her I would do my best. Later that night, later that night I finished the mail, but two carriers came to help with the parcels. When I arrived back at the station a manager told me they was thinking about firing me.

The next day Courtney and Tiffany, along with Reginald, held a meeting with me and told me I wasn't doing good. I asked what did I do wrong. And they said I took – wait, and they said I took too long yesterday and an army had to help me.

I told them the story I just gave. So Courtney stated that she had a video of the truck showing how many parcels were left. They told me I needed to improve this week.

Courtney also told me to tone it down a little. I asked her what does she mean. She said my hair bows and half a jacket, that I needed to find a longer jean jacket. I said okay.

Tiffany said that I needed to change the color of my bows which were pink. I said okay. Also Courtney asked me what was I crying for and I said because it's overwhelming. I don't understand. I'm being picked on. I don't understand. I'm being picked on. Everything that – I don't know.

Also I was told by Reginald he doesn't stand a chance with them. I arrived – I don't know. I arrived – I don't know – is done to me. I left – I don't know. I cannot see that. Let me see. Hold up because I want to read it correctly.

Here we go. Okay. So it says Tiffany stated that I need to change the color of my bows which were pink. I said okay. Also Courtney asked me what was I crying for and I said because it's overwhelming. I don't understand why I'm being picked on.

And that went to go on break everything, everything is done to me. I tell Reginald, but he doesn't stand a chance with them.

One Sunday I was sitting home when I arrived after I was told to come in. No one filed a grievance. Two Mondays I was sent home when I arrived, but I told Reginald about the last Monday and he spoke with them.

I left and Reginald called me and said come back after I was far away. I told him I'm not coming back and he stated I had to, that they were going to use that against me so I came back. Also, I was sent to Central for one week. Please help me.

(Rec. Doc. No. 57-6, pp. 49-54). This is precisely the kind of vague complaint that fails to constitute protected activity. This is so because it lacks any reference to an unlawful employment practice under Title VII, and when pushed to identify the basis for the harassment and bullying after the fact, Plaintiff affirmatively denied any racial harassment and stated it was "possible" that she was bullied for being a female. "Complaints to employers that do not complain of conduct protected by Title VII do not constitute protected activities under the statute." *Williams v. Racetrac*

*Petroleum, Inc.*, 824 F.Supp.2d 723, 726 (M.D. La. 2010) (citing *Cavazos v. Springer*, 2008 WL 2967066, at *7 (S.D. Tex. Aug. 8, 2008)). It is unclear from Plaintiff's letter to HR what activity, if any, would be protected under Title VII.

"Summary judgment, to be sure, may be appropriate, even in cases where elusive concepts such as motive or intent are at issue, … if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994) (citing *Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1449 (5th Cir. 1993)). Here, any allegations of protected activity are nothing but unsupported speculation.

However, because activity may be protected if "the employee holds a good faith, reasonable belief of the conduct's unlawfulness," *see id.*, and Plaintiff has failed to file any opposition outlining her position, the Court will proceed to analyze the remainder of Defendant's arguments.

### ii.  Causal Connection

Defendant further argues that Plaintiff cannot show a causal connection between her HR letter and the decision to terminate her. (Rec. Doc. No. 57-1, p. 12). The USPS notes that Winston cannot demonstrate that either of her supervisors, Tiffany Perkins or Courtney Foxworth, knew that she had complained to HR about the harassment and bullying. *Id*. Finally, the USPS points to Winston's deposition testimony in which she stated that she did not share the HR letter with any of the managers at her station.[2]

---

[2] Q [Attorney:] Did you share your handwritten letter with the managers at the Uptown Station?
A [Winston:] Did I share this letter with any of the managers?
Q [Attorney:] Yes, ma'am.
A [Winston:] No.
Q [Attorney:] Did you show this letter to any of the supervisors at the Rondeno Station?
A [Winston:] No.
(Rec. Doc. No. 57-6, p. 59).

"Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test stated in § 2000e-2(m)." *Univ. of Tex. Sw. Med. Ctr. V. Nassar*, 570 U.S. 338, 339, 133 S.Ct. 2517, 2533, 186 L.Ed.2d 503 (2013). In order to show that retaliation was the "but-for" reason for her termination, Winston would have to show that the USPS was aware of her involvement in protected activity. The Fifth Circuit has held that "[i]f an employer is unaware of an employee's protected conduct at the time of the adverse employment action, the employer plainly could not have retaliated against the employee based on that conduct." *Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 168 (5th Cir. 1999) (citation omitted).

The uncontradicted evidence in the record indicates that the decision to terminate Winston was made by Tiffany Perkins, the Customer Service Supervisor, and Courtney Foxworth, the Manager of Customer Service. (Rec. Doc. No. 57-2 "Declaration of Tiffany Perkins" & Rec. Doc. No. 57-5 "Declaration of Courtney Foxworth"). Nothing in the record indicates that Perkins or Foxworth were aware of Winston's involvement in filing the HR complaint. Winston admitted during her deposition that she did not share her HR letter with any of her managers, including Perkins and Foxworth. (Rec. Doc. No. 57-6, p. 59). As her managers were unaware of the letter she submitted to HR at the time of her termination, Perkins and Foxworth could not have retaliated against her based on that conduct. *See Chaney*, 179 F.3d at 168. With no evidence that retaliation was the "but-for" cause of her discharge, Winston does not establish a prima facie case of retaliation. Where the movant bears the burden of proof on an issue, they must establish "beyond peradventure all of the essential elements of the claim… to warrant judgment in [their] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Here, Plaintiff has failed to prove

two of the three elements of a claim for retaliatory termination, and thus, summary judgment is appropriate.

### iii. Legitimate, Non-retaliatory Reason for Termination

However, even assuming, *arguendo*, that Winston established a prima facie case of retaliation, the USPS has met its burden to provide a legitimate, non-retaliatory reason for her termination. Defendant argues that Plaintiff was terminated during her probationary period because of poor performance and safety issues. (Rec. Doc. No. 57-1, p. 12). On numerous occasions, Plaintiff returned undelivered mail and parcels without informing her supervisor, as is required by the USPS. *Id*. Additionally, safety violations occurred when Winston was seen driving a mail truck off her assigned route while talking on a cell phone. *Id*.

The declaration of Tiffany Perkins states that on November 15, 2018, Acting Supervisor Romenesha Hebert issued a Letter of Warning to Winston regarding undelivered mail and parcels. (Rec. Doc. No. 57-2, p. 2). Winston was charged with failure to follow instructions, i.e., unauthorized curtailment of mail. *Id*. "Ms. Winston, as well as all mail carriers, are required to deliver all mail on their route and to notify management when they believe that all the mail cannot be delivered on their shift." *Id*. Plaintiff did not deliver the mail nor notify management of her inability to do so. *Id*. In her deposition, Plaintiff indicates that she failed to deliver all the mail "[o]ver five times, I know that. Over ten times." (Rec. Doc. No. 57-6, p. 17). Plaintiff further stated that she failed to deliver all packages "[a]t least over maybe five times." *Id*.

On November 16, 2018, Perkins conducted a probationary report and performance evaluation, rating Winston "unsatisfactory" in the work quantity and work quality factors because she repeatedly brought back undelivered mail and packages, a requirement of a city mail carrier's job. (Rec. Doc. No. 57-2, p. 2). After returning undelivered mail and parcels again without

contacting management, Acting Supervisor Hebert issued a second Letter of Warning to Winston

on November 21, 2018. *Id*. Additionally, on December 29, 2018, Acting Supervisor Reinada

Thomas and Perkins conducted street supervision of carriers, and they were unable to find Winston

or get in touch with her. *Id*. at 3. Eventually, Plaintiff was observed driving in the direction of her

route talking on a cellphone held up to her ear. *Id*. "We met up with her and she told us that she

had gone to T-Mobile to buy a phone." *Id*. A statement memorializing these happenings is attached

as an exhibit, (Rec. Doc. No. 57-2, p. 13), and Plaintiff further corroborated these allegations in

her deposition:

> Q. [Attorney:] Okay. Ms. Winston, you told me a few minutes ago that while you're driving
> the postal vehicle, you're not allowed to talk on the phone. Can you hold a phone in your
> hand when you're driving a vehicle, a postal vehicle?
> A. [Winston:] No.
> Q. [Attorney:] Did you ever buy a phone while you were on duty?
> A. [Winston:] Yes, I did.
> Q. [Attorney:] And you said a little while ago that you weren't supposed to run personal
> errands while you're on duty. Why did you run – buying a phone is a personal errand; isn't
> it?
> A. [Winston:] Yes, it is.

(Rec. Doc. No. 57-6, pp. 20-21). The record is replete with examples of performance complaints

and safety violations, the issues cited by Perkins and Foxworth in terminating Plaintiff.

The burden then shifts back to Winston to prove that her poor performance and safety

violations are pretext for a discriminatory motive. *See Medlock v. Ace Cash Exp., Inc.*, 589

Fed.Appx. 707, 709 (5th Cir. 2014). This, Winston is unable to do. Although Winston is

dissatisfied with her treatment and termination while working with the USPS, "[m]anagement does

not have to make proper decisions, only non-discriminatory ones." *Bryant v. Compass Grp. USA*

*Inc.*, 413 F.3d 471, 478 (5th Cir. 2005) (citing *Little v. Republic Refining Co.*, 924 F.2d 93, 97 (5th

Cir. 1991)). Accordingly, the USPS has met its burden of proving a legitimate, non-discriminatory

reason for Ms. Winston's termination.

Furthermore, and as outlined in detail above, Plaintiff fails to make a prima facie claim for retaliatory termination. Because Plaintiff cannot prove two elements of a prima facie claim, and because even if she could, Defendant has offered a legitimate, non-discriminatory reason for her termination supported by ample evidence in the record, summary judgment must be granted.

IV.    **CONCLUSION**

       Accordingly,

**IT IS ORDERED** that the Motion for Summary Judgment (Rec. Doc. No. 57) is **GRANTED**.

       New Orleans, Louisiana, this 25th day of October, 2022.

_____
**DANA M. DOUGLAS**
**UNITED STATES MAGISTRATE JUDGE**